# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| David A., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No.: 23-cv-50458 |
| v. | ) |
| | ) Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, David A., seeks review of the final decision of the Commissioner of the Social Security Administration denying him disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## BACKGROUND

### A. Procedural History

On March 2, 2021, David A. ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits, alleging a disability beginning on October 1, 2018. R. 15. The Social Security Administration denied his application initially on May 13, 2021, and upon reconsideration on September 1, 2021. *Id*. Plaintiff filed a written request for a hearing and on January 13, 2022, a telephonic hearing was held by Administrative Law Judge ("ALJ") Lana Johnson where Plaintiff appeared and testified. *Id*. Plaintiff was represented by counsel. *Id*. Tobey Andre, an impartial vocational expert ("VE"), also appeared and testified. R. 78. After the hearing, the ALJ sent psychological medical expert interrogatories to Dr. Michael Lace, Psy.D. R. 15. On November 8, 2022, the ALJ held a supplemental telephonic hearing. Plaintiff appeared and testified at the supplemental hearing. R. 41. He was represented by counsel. R. 35. Michael A. Lace, Psy.D., an impartial medical expert, and Jacqueline Bethell, an impartial vocational expert ("VE"), appeared and testified at the supplemental hearing. *Id*.

On May 2, 2023, the ALJ issued her written opinion denying Plaintiff's claims for disability and disability insurance benefits. R. 15-28. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's motion to reverse or remand the Commissioner's decision [9], the Commissioner's response brief [12], and Plaintiff's reply [13].

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2018. R. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: posttraumatic stress disorder ("PTSD") and anxiety. R. 18-19. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 19-20.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: is able to understand, remember, and carryout routine tasks with few, if any, changes to the tasks; not able to meet fast paced production line requirements. R. 20-26. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 26. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 27. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from October 1, 2018, through the date of decision, May 2, 2023. R. 27.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) inadequately evaluating the medical opinions of an examining psychologist and the impartial medical expert; (2) failing to consider how Plaintiff's impairments would affect his ability to sustain the on-task and attendance requirements of full-time work; and (3) failing to consider Plaintiff's non-severe impairments when determining Plaintiff's residual functional capacity ("RFC"). The Court finds that the ALJ adequately evaluated the medical opinions and properly assessed how Plaintiff's severe impairments would affect his RFC. The Court concludes that the ALJ did err by failing to consider Plaintiff's non-severe impairments when assessing his RFC, but that any error was harmless. Accordingly, the Court affirms the ALJ's decision.

A claimant's residual functional capacity is the maximum a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a); *see also* SSR 96-8p, 1996 WL 374184, at *2. When determining a claimant's RFC, an ALJ must consider all of a claimant's "medically determinable impairments," including medically determinable impairments that are not "severe." 20 C.F.R. § 404.1545(a). An impairment is not severe if it "has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities." SSR 85-28; *see* 20 C.F.R. § 404.1520. An ALJ must build "an accurate and logical bridge from the evidence to" the RFC. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 777 (7th Cir. 2022). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Id*. (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Plaintiff first takes issue with the ALJ's evaluation of the medical opinion evidence. Before determining Plaintiff's RFC, the ALJ in this case thoroughly reviewed the medical record, Plaintiff's testimony, and the medical opinions of various medical professionals. R. 21-28. Under the Social Security regulations, a medical opinion is "a statement from a medical source about what [Plaintiff] can still do despite [his] impairment(s) and whether [Plaintiff] ha[s] one or more impairment-related limitations or restrictions" in different work-related abilities. 20 C.F.R. § 404.1513. In evaluating claimants' disability claims, ALJs "need not 'defer or give any specific evidentiary weight' to any medical opinion." *Evonne R. v. Kijakazi*, No. 20CV7652, 2022 WL 874650, at *3 (N.D. Ill. March 24, 2022) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). Nevertheless, ALJs must consider all medical opinions and analyze them based on certain factors including supportability and consistency. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). In reviewing an ALJ's analysis of a medical opinion, "a 'logical bridge' remains the touchstone of judicial review." *Evonne R.*, 2022 WL 874650, at *5. An ALJ "must consider the regulatory factors and explain why a medical opinion is not supported or is not consistent with the record to give a reviewing court the bridge to connect the outcome to the record." *Id*. If a medical source's statements do not constitute a medical opinion, "an ALJ has no duty to specifically examine or evaluate [them] under the regulatory factors." *Miller v. Kijakazi*, No. 21CV094, 2022 WL 4592016, at *5 (N.D. Ind. Sept. 29, 2022); *see also Everson v. Kijakazi*, No. 21CV716, 2022 WL 3656462, at *7 (E.D. Wisc. Aug. 25, 2022) (finding that letter from therapist "did not outline any functional limitations or restrictions," and therefore "the ALJ didn't need to address it.").

Plaintiff argues that the ALJ failed to properly consider the medical opinions of Dr. Sehrish Tariq, Psy.D. and Dr. Michael Lace, Psy.D. Dr. Tariq completed a Department of Veterans Affairs

3

Disability Benefits Questionnaire on November 26, 2019. R. 1722-1736. As part of that questionnaire, Dr. Tariq checked a box indicating that Plaintiff has "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." R. 1726. The ALJ considered the statement but found that it was not persuasive because it was not expressed in specific functional terms and did not "express the most [Plaintiff] could do despite his impairments." R. 25. Dr. Lace, the impartial medical expert, completed a medical interrogatory on July 17, 2022 and testified at the November 8, 2022 supplemental hearing. R. 46-69, 1745-1750. Dr. Lace opined that Plaintiff was "limited to work with no fast-paced production line type requirements," and "routine tasks with few, if any, changes in the general nature of the tasks throughout the day." R. 50. The ALJ found these opinions persuasive because they were supported by the record and consistent with Plaintiff's testimony. R. 26. However, the ALJ found Dr. Lace's opinion that Plaintiff must work with no access to alcohol not persuasive because "it is not a functional limitation." *Id.*

The ALJ did not need to evaluate Dr. Tariq's questionnaire pursuant to the regulatory factors because it was not a medical opinion under the Social Security Regulations. In the questionnaire, Dr. Tariq thoroughly reviewed Plaintiff's diagnoses, his relevant history, and his symptoms, but offered "no insight into functional limitations, severity, or prognosis." *Kimberly L. W. v. Berryhill*, No. 17CV50281, 2019 WL 354980, at *4 (N.D. Ill. Jan. 29, 2019). The questionnaire did not indicate what Plaintiff "could still do despite his limitations," nor did it specify Plaintiff's "impairment-related limitations or restrictions in terms of his ability to perform certain work demands." *Miller*, 2022 WL 4592016, at *4 (internal quotations and citation omitted); *see also* 20 C.F.R. § 404.1513. Therefore, it is not a medical opinion under the regulations and Plaintiff has identified no error with respect to the ALJ's analysis of the statement.

As to Dr. Lace, Plaintiff claims that the ALJ should have considered Dr. Lace's testimony that he would have preferred additional evidence in the record and that he was not familiar with the specifics of the events which contributed to Plaintiff's PTSD. The alleged weaknesses which Plaintiff points out would not have altered the ALJ's consideration of the regulatory factors. *Cf. Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) ("The omitted evidence that Plaintiff highlights . . . did not reveal any substantially different information about [his] . . . problems than did the evidence that the ALJ addressed."). Although Dr. Lace testified that it was "unfortunate[]" that there was not more detail in the record in terms of medical source opinions or consultative examinations, he never testified that his opinion was unreliable without such evidence. R. 48. Rather he testified that the "record as a whole" provided support for mild and moderate ratings. *Id.* As to his admitted unfamiliarity with the specifics of Plaintiff's work in the Marines, Dr. Lace testified that knowledge of the specific details of Plaintiff's trauma would not necessarily affect his opinions because he is more concerned with "what clinical records describe as symptoms and severity." R. 55. An ALJ does not need to address every piece of evidence in the record, if an ALJ properly considered the statutory factors when weighing a medical opinion, a reviewing court "must allow that decision to stand so long as the administrative law judge minimally articulated [her] reasons." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (internal quotation marks and citation omitted). The ALJ evaluated Dr. Lace's opinions pursuant to the regulatory factors and found his opinions (aside from the restriction on alcohol) persuasive because they were "supported by Dr. Lace's review of the record" and "consistent with Plaintiff's testimony." R. 26. Plaintiff also claims that Dr. Lace's opinions about alcohol were erroneous, but even if they were,

4

the ALJ did not find Dr. Lace's opinion that Plaintiff "must work with no access to alcohol" persuasive. R. 26.

Plaintiff also argues that the ALJ failed to account for his limitations in formulating the RFC, specifically in her determination that Plaintiff could sustain on-task and attendance requirements.[1] The ALJ found that Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace as well as in adapting or managing himself. Despite these limitations, the ALJ concluded that Plaintiff could perform a full range of work and "understand, remember, and carryout routine tasks with few, if any, changes to the tasks, though he could not meet fast paced production line requirements." R. 20. Plaintiff argues that the ALJ did not support this determination with substantial evidence.

Plaintiff claims that the ALJ failed to build a logical bridge between her conclusion that Plaintiff has moderate limitations concentrating, persisting, or maintaining pace and the RFC. To account for Plaintiff's moderate limitation, the ALJ limited Plaintiff to "routine tasks" with few changes and no "fast-paced production line requirements." R. 20. Courts in the Seventh Circuit have found that ALJs "may not rely merely on catch-all terms" to account for moderate limitations in concentrating, persisting, or maintaining pace. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (restricting plaintiff to "simple, routine, repetitive tasks" needed further explanation); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (finding restriction to no "fast paced production requirements" without explanation vague). However, courts have upheld similar restrictions when the ALJ supports them with substantial evidence and explains the logical bridge between the limitations and the RFC. *Alissa K. v. Saul*, No. 20CV3091, 2021 WL 1998235, at *7 (N.D. Ill. May 19, 2021); *Gwendolyn B. v. Saul*, No. 20CV3244, 2021 WL 1812879, at *9 (N.D. Ill. May 6, 2021) ("[T]he court has found it acceptable for an ALJ to translate a moderate restriction into a quota or pace limitation where the ALJ draws it from the narrative assessment of a doctor."); *see also Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). In this case, the ALJ supported the RFC determination by relying on the medical opinions of Dr. Lace, as well as the medical opinions of the state agency consultants. The ALJ found persuasive Dr. Lace's opinion that Plaintiff would be able to perform repetitive work continuously as long as the work is routine with few, if any, changes and no fast-paced production line requirements, which he defined as no "moment to moment or hourly quotas." R. 26, 66-67. The ALJ used Dr. Lace's exact recommendations in determining Plaintiff's RFC. *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination."). The ALJ also found persuasive the opinions of state agency consultants who concluded in their narrative explanations that Plaintiff could "sustain attention for up to two hours with normal breaks," "complete a routine workday under normal supervision," and "persist at one to two step tasks which can be learned in one to three months on the job."[2] R. 25, 137, 148.

---

[1] Plaintiff also argued in his briefing that the ALJ erred at step 3 in finding him mildly limited in interacting with others, moderately limited in concentrating, persisting or maintaining pace, and moderately limited in adapting or managing himself. However, Plaintiff concedes that any error would be harmless at step 3, therefore, this Court need not address whether the ALJ erred at step 3.

[2] The ALJ did not include the limitation to one to two step tasks in the RFC she wrote on page six of the decision. R. 20. However, she did adopt that limitation in the narrative discussion of Plaintiff's RFC and included it in one of her hypotheticals to the VE. R. 25, 72. The VE stated that the same jobs would be available given that additional limitation, among other additional limitations. R. 72. Therefore, any error in failing to explicitly list it in the RFC as written on page six was harmless. *Egly v. Berryhill*, 746 F. App'x 550, 555 (7th Cir. 2018) (finding harmless error

The ALJ formulated Plaintiff's RFC based on those medical opinions. The ALJ's reliance on those medical opinions was permissible. *Burmester*, 920 F.3d at 511. The ALJ's own conclusions that Plaintiff was "able to follow along during the hearing without difficulty" and that objective evidence reflected "grossly intact attention and concentration" further supported the RFC. R. 19. Accordingly, the ALJ properly accounted for Plaintiff's moderate limitations in formulating the RFC.

Plaintiff also claims that the ALJ erred by failing to account for Plaintiff's non-severe limitations when determining the RFC. At step 2, the ALJ determined that Plaintiff had the following non-severe physical impairments: "episodic alcohol use; obesity; degenerative disc disease, lumbar spine; dextroconvex (scoliosis) curvature of thoracic spine; tinnitus; asthma; history of right ankle fracture; left index trigger finger; left ankle bone spur; left knee degenerative joint disease and small meniscal tear; and gastroesophageal reflux disease (GERD)." R. 18. The ALJ did not mention these non-severe physical impairments when assessing Plaintiff's RFC. This was an error. *See Brandon D. v. O'Malley*, No. 22CV711, 2024 WL 4449965, at *3 (N.D. Ill. Oct. 9, 2024); *see also Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Even if the ALJ determined that Plaintiff's non-severe impairments "did not warrant limitations in the RFC, the ALJ was nonetheless obligated to provide a sufficient explanation for that conclusion." *Brandon D.*, 2024 WL 4449965, at *4.

The Commissioner argues that the Court should read the ALJ's decision as a whole and that the ALJ addressed the impact of Plaintiff's non-severe limitations on his RFC during the discussion of Plaintiff's non-severe impairments at step two. At step two, the ALJ did provide a detailed assessment of Plaintiff's non-severe impairments. R. 18-19. The ALJ reviewed the medical evidence, Plaintiff's conservative treatment, the lack of exacerbation, complication or resulting hospitalizations, the medical opinions of state agency consultants, and Plaintiff's testimony that he was able to participate in boxing and jujitsu. *Id*. The ALJ concluded that Plaintiff's non-severe impairments "did not cause more than minimal limitation in the ability to perform basic work activities." R. 18. Although the ALJ clearly contemplated the extent and severity of Plaintiff's non-severe impairments, she never explicitly assessed "what impact [Plaintiff's] mild functional limitations might have when considered in tandem with" his severe mental impairments. *Muzzarelli v. Astrue*, No. 10CV7570, 2011 WL 5873793, at *24 (N.D. Ill. Nov. 18, 2011) ("The ALJ may have believed that [Plaintiff's limitations] were too mild to add to the restrictions that stemmed from her severe impairments. If so, [the ALJ] was required to state that fact and to make the basis of his reasoning clear."). Therefore, the ALJ erred by not addressing the impact of Plaintiff's non-severe limitations on his RFC.

However, the Court concludes that the error was harmless. As the Commissioner argues, Plaintiff "has not specified how the combined impact of his other non-severe impairments would lead to additional RFC limitations . . . nor has he cited to evidence supporting further limitations from the combined effect of those impairments." *Thompson K. v. Kijakazi*, No. 21CV1298, 2023 WL 7016621, at *8 (N.D. Ill. Oct. 25, 2023). Plaintiff asserts that the non-severe impairments caused him pain and limited his range of motion. He generally claims that if the ALJ considered his non-severe impairments in combination with his severe mental impairments she would have

---

where ALJ did not explicitly incorporate mental limits into his RFC findings but where VE testified that jobs would still be available for a hypothetical person with those mental limitations).

concluded that Plaintiff could not perform a full range of work at all exertional levels and that he could not sustain the on-task and attendance requirements of full-time work. Despite his claims that these non-severe physical impairments restrict his ability to work, as the ALJ noted, Plaintiff "was active in boxing and jujitsu" and frequently "worked out in the basement." R. 24. In fact, in response to the ALJ's question, "Are you still boxing and going to the gym at Quest yourself?" Plaintiff replied, "I mean that's what I do." R. 96. The Court has great confidence that on remand any ALJ would conclude that Plaintiff's non-severe physical impairments do not restrict his ability to work because they do not restrict his ability to work out or participate in martial arts. R. 494, 571, 1261, 1238. Therefore, any error in failing to consider the impact of Plaintiff's non-severe impairments was harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.").

Overall, the ALJ supported her RFC determination with substantial evidence. The ALJ thoroughly reviewed Plaintiff's medical history. R. 21-25. She noted that "the most recent clinical findings" reflect that Plaintiff "was focused and participated in groups sessions appropriately." R. 24. The ALJ properly considered that Plaintiff's "treatment was conservative, without documentation of acute distress due to mental dysfunction, episodes of remission or deterioration or resulting psychiatric hospitalizations." R. 24. *See Anthony B. v. Kijakazi*, No. 20CV2525, 2023 WL 7220171, at *5 (N.D. Ill. Nov. 2, 2023) ("[W]hether to characterize the course of plaintiff's treatment as conservative or in some other fashion, and the weight to be given to that course of treatment, were decisions for the ALJ to make."). It also was appropriate for the ALJ to consider that medications "helped control [Plaintiff's] anxiety and panic attacks." *Lawrence P. v. Saul*, No. 18CV5763, 2019 WL 3554451, at *5 (N.D. Ill. Aug. 5, 2019) ("An ALJ may rely on medical evidence that the condition is treated and controlled by medication." (internal quotations and citation omitted)). This Court's review "proceeds with a light touch—not holding ALJs to an overly demanding evidentiary standard." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025). The Seventh Circuit has "emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "Under that minimal requirement, the ALJ said enough here to support" her conclusions. *Thorlton*, 127 F.4th at 1080; *see also Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (Courts do "not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it").

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.

Date:   July 22, 2025

ENTER:

*Margaret J. Schneider*
United States Magistrate Judge

7